UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARRY L. WHITE,  )
)
)
      Plaintiff,  )
)
) No. 08 C 5441
      v.  )
) Senior U. S. District Court Judge
) George W. Lindberg
)
MICHAEL J. ASTRUE,  )
COMMISSIONER OF SOCIAL SECURITY,  )
)
      Defendant.  )

**MEMORANDUM AND ORDER**

On September 23, 2008, plaintiff Barry L. White filed a complaint against defendant, Commissioner of Social Security Michael J. Astrue, requesting an administrative review of the denial of Social Security Disability Insurance Benefits and Supplemental Security Income pursuant to 42 U.S.C. § 405(g). Plaintiff alleges that defendant's decision was not supported by substantial evidence and did not follow proper legal standards. Plaintiff has moved for summary judgment seeking a reversal of defendant's denial of benefits and a remand for a de novo hearing before a different Administrative Law Judge ("ALJ"). Defendant has also moved for summary judgment seeking to have the decision denying benefits affirmed. For the reasons stated below, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

08 C 5441

On June 6, 2005, plaintiff, a 41-year-old male with a high school diploma and an associate's degree in accounting, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Plaintiff alleged that he had been disabled since April 1, 2004, and had a combination of physical and mental impairments. Plaintiff had previously worked as a dishwasher, "restaurant front of house" worker, warehouse worker, machine operator, cleaner, and security officer, but had not worked since 2004.

Plaintiff's medical records show that he fell and was injured at work in July 2003. Plaintiff was seen in the emergency room after his fall. A magnetic resonance imaging study of plaintiff's right knee showed that he had a complete tear of the patellar tendon. Plaintiff had surgery to repair the tendon on July 18, 2003. By August 22, 2003, plaintiff could bear his full weight with the use of a cane. Plaintiff also underwent physical therapy on his knee, but was released in December 2003 and deemed capable of performing all activities of daily living and work activities. By this time, plaintiff had also resumed full duty, full-time work.

There is little medical evidence between 2003 and 2005. Plaintiff's medical records show he received sporadic treatment from 2002 through 2005 at the Lake County Health Department and Community Health Care Primary Care Service ("Lake County") for various aches and pains, usually in his knee and back, blurry vision, headaches, and restlessness. At some time prior to that period, plaintiff had completed a drug rehabilitation program through the Lake County Health Department for treatment of alcohol and cocaine addiction.

In July 2005, Dr. Scott Kale examined plaintiff at the request of the Social Security Administration ("SSA"), and diagnosed him with arthritis of the right knee. Dr. Kale stated plaintiff required a cane to ambulate. In August 2005, plaintiff returned to Lake County, where he reported pain with ambulation, and a relapse of cocaine and alcohol use. There he was diagnosed with obesity and hypertension. In December 2005, Dr. Allan Nelson performed a psychiatric examination of plaintiff at the request of the SSA. During that examination, plaintiff claimed that he had been drug and alcohol free for nine years and reported, among other things, difficulty concentrating, forgetfulness, and low frustration tolerance leading to angry and violent outbursts. Dr. Nelson diagnosed plaintiff with adjustment disorder with depressed mood and personality disorder, and stated plaintiff's prognosis was "guarded to fair."

In January 2006, Dr. Heinrich Jerrold reviewed plaintiff's medical records for the SSA and concluded plaintiff had the mental and behavioral capacity to do simple work tasks with the limitations that plaintiff's job be of low stress, and that plaintiff not have frequent interactions with others nor frequent changes in his environment. In May 2006, Dr. Tahira Malik, plaintiff's treating physician, reported that she had been seeing plaintiff a couple of times per year at Lake County for back pain and hypertension. Dr. Malik noted plaintiff could walk one or two blocks without rest or severe pain, but that his impairments and pain were likely to produce "good" and "bad" days that would necessitate missing work about four times a month. Chiropractor Dr. Mark Mitten saw plaintiff in June of 2006. Dr. Mitten performed chiropractic and other treatments, which resulted in plaintiff showing "considerable relief" of his back and neck pain, and his headaches.

Plaintiff ultimately had an administrative hearing before ALJ Cynthia Bretthauer ("the ALJ") on March 15, 2007. At the hearing, plaintiff claimed that he had pain in his joints and muscles, had difficulty walking, sitting, and standing, and that his body was "locking up." He stated he could walk for "a couple blocks" without a cane and an additional block or two with a cane. He also stated that he had not used alcohol or cocaine for two years. The ALJ found that while plaintiff had a combination of impairments that was severe, the impairments did not prevent him from doing his past relevant work as a dishwasher, food service worker, warehouse worker, and cleaner. Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits. The SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision.

When assessing a claim for disability benefits, an ALJ must follow the five-step analysis set forth in the SSA's regulations. 20 C.F.R. §§ 404.1520, 416.920. Step 1 of the analysis asks whether the claimant is currently engaged in a "substantial gainful activity." *Id*. at §§ 404.1520(b), 416.920(b). If not, Step 2 asks whether the claimant has an impairment or combination of impairments that is severe and thereby "significantly limits [the claimant's] … ability to do basic work activities." *Id*. at §§ 404.1520(c), 416.920(c). If the claimant has an impairment or combination of impairments that is severe, Step 3 asks whether the claimant's condition meets or equals one (or more) of the impairments set forth in 20 C.F.R. Part 404 Subpart P, Appendix 1 ("the Listings"). *Id*. at §§ 404.1520(d), 416.920(d). If the claimant's condition does not meet or equal one of the Listings, the analysis proceeds to Step 4, where the ALJ determines the claimant's residual functional capacity ("RFC"), and whether the claimant's RFC allows him to return to any of his past relevant work. *Id*. at §§ 404.1520(e), 416.920(e). If

the claimant cannot return to his past work, Step 5 asks whether the claimant can make an adjustment to other work, considering his RFC, age, education, and past work experience. *Id*. at §§ 404.1520(f), 416.920(f). At this final step the burden is on the Commissioner to show that the claimant can perform some type of gainful employment that exists in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Because the SSA's Appeals Council denied plaintiff's request for review, the ALJ's ruling constitutes the final decision of the Commissioner. *See Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir 2003). A reviewing court must affirm the ALJ's findings so long as they are supported by substantial evidence. *Id*.; *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Young v. Secretary of Health & Human Services*, 957 F.2d 386, 388-389 (7th Cir. 1992). An ALJ must connect the evidence to her conclusion through an "accurate and logical bridge." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). A court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the ALJ to decide whether the claimant is or is not disabled. *Powers*, 207 F.3d at 434-435. Both "the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since the review of the substantiality of the evidence takes into account whatever in the record fairly detracts from its weight." *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986).

Step 1 of the analysis is not at issue here. The ALJ found, and both sides agree, that plaintiff is not currently engaged in any gainful activity under Sections 404.1520(b) and

08 C 5441

416.920(b). Plaintiff argues the ALJ first erred when she decided at Step 2 that plaintiff did not have a "severe" impairment or impairments under 20 C.F.R. § 404.1520(c). However, plaintiff's argument fails because the ALJ found plaintiff had a "severe combination of impairments" consisting of degenerative joint disease of the right knee, lower back pain, hypertension, morbid obesity, depression, personality disorder, and a history of substance abuse. Furthermore, the ALJ would not have had occasion to continue to Step 3 if she had determined that plaintiff's impairments were not severe when taken separately or together. Therefore, the ALJ did determine that plaintiff had a "severe" impairment or impairments under 20 C.F.R. § 404.1520(c).

Plaintiff also argues that medical evidence in the record shows he also suffered from migraine headaches, and such an ailment would constitute a severe impairment, either by itself or when considered in conjunction with his other impairments. However, since the ALJ found that plaintiff had a severe combination of impairments, it does not matter for the purposes of Step 2 whether or not that combination included migraine headaches. The end result is the same: a finding of a severe impairment or combination of impairments only causes the analysis to proceed to Step 3. *See Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (stating that "severity" under Step 2 is "merely a threshold requirement.").

Plaintiff next argues that the ALJ erred at Step 3 when she found plaintiff's impairments did not meet or equal any of the Listings found in 20 C.F.R. § 404(P) Appendix 1. The ALJ considered plaintiff's impairments under Listings 1.02A (major dysfunction of a joint due to any cause), 1.04A (disorders of the spine), 4.04 (ischemic heart disease), 12.04 (affective disorders),

12.08 (personality disorders), 12.09 (substance addiction disorders), and 14.09 (inflammatory arthritis). Plaintiff claims that his knee impairment should have been considered under Listing 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), rather than under Listing 1.02A. Listing 1.03 requires both an inability to ambulate effectively, as defined in 1.00B2b, and no return to effective ambulation within 12 months of the onset of the inability. *See* 20 C.F.R. § 404(P) app. 1. Plaintiff's surgery took place in July 2003 and plaintiff was released from treatment and returned to full-duty, full-time work, with no restrictions, in December 2003. So, regardless of whether plaintiff had an inability to ambulate effectively immediately following his surgery in 2003 (which, incidentally, was months before his claimed onset of disability in April 2004), by December of 2003 plaintiff could ambulate effectively. And, because Listing 1.02A can apply to major dysfunctions of a joint "due to any cause," that listing is broad enough to encompass possible effects of plaintiff's surgery that manifested after plaintiff's return to work and effective ambulation at the end of 2003. Therefore, analysis under Listing 1.02A rather than 1.03 was appropriate.

The question under 1.02A is whether plaintiff was unable to ambulate effectively as defined in Listing 1.00B2b. *See* 20 C.F.R § 404(P) app. 1. The ALJ determined plaintiff's impairments did not create an inability to ambulate effectively, and plaintiff contends that this finding was an error of law. Specifically, plaintiff argues that the ALJ "failed to mention Section 1.03," but this argument is without merit because the appropriate listing was 1.02A, rather than 1.03.

Plaintiff also claims that the finding of no inability to ambulate effectively was not supported by substantial evidence because the ALJ ignored the report of Dr. Kale, and therefore did not build an accurate and logical bridge between the medical evidence and her finding. The ALJ found no inability to ambulate effectively because the record did not contain evidence of the type mentioned in Listing 1.00B(2)(b), namely a need to walk using a walker, two crutches, or two canes. The record did contain evidence that plaintiff may have needed one cane, but that is not enough under 1.00B(2)(b). And, as the ALJ noted, not all examining doctors mentioned that plaintiff was using a cane, or that he had any need for one. Furthermore, plaintiff himself stated in the administrative hearing that he could walk two blocks without the use of any cane. Therefore the ALJ's conclusion under Listing 1.02A that plaintiff had the ability to ambulate effectively was supported by substantial evidence.

Plaintiff next argues that the ALJ erred in her determination of plaintiff's residual functional capacity ("RFC") at Step 4. He claims that the ALJ misweighed the medical evidence and did not support her determination with substantial evidence. A court may not reweigh the evidence or determine facts on review. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). The only consideration is whether the ALJ's decision is supported by substantial evidence.

To that end, the ALJ must "articulate in a rational manner" the reasons for her assessment of a claimant's residual functional capacity. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Plaintiff claims the ALJ relied on conjecture and her own assessment of the medical evidence, and in effect "play[ed] doctor" rather than building an accurate and logical bridge from the evidence to her conclusion. To a certain degree, it is the function of the ALJ to personally

08 C 5441

assess the medical evidence because she must make factual determinations, and often (as is the case here) there is conflict within the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). The trier of fact has the duty to resolve such a conflict. *See id.* So, the ALJ's reliance on her own assessment of the medical evidence was not erroneous.

Furthermore, the ALJ articulated her decision in a rational manner, and her decision is supported by substantial evidence. The ALJ's determination was supported by the opinions of the physicians employed by the State Disability Determination Services, who found plaintiff "not disabled." The ALJ stated that she gave little weight to Dr. Malik's opinion because (1) it is without substantial support from the other evidence of record; (2) there were significant gaps in the treatment history; and (3) the course of treatment pursued by Dr. Malik and Lake County was not consistent with what would be expected from a person truly disabled. The ALJ also discounted Dr. Kale's determination that plaintiff could not stand without using both hands and could not walk 50 feet without a cane because Dr. Kale's observations conflicted with medical records from Lake County, the findings of Dr. Malik and Dr. Mitten, and plaintiff's own testimony that he can walk two blocks without a cane and three blocks with a cane.

Contrary to plaintiff's assertion, the ALJ also specifically took account of plaintiff's obesity by making her RFC determination considering "the combined effects of obesity with [plaintiff's] other impairments," and specifically addressed obesity as a factor in plaintiff's back impairments and difficulty walking. Also contrary to plaintiff's assertion, the ALJ accounted for plaintiff's mental limitations. She specifically considered the mental status findings of both Dr. Kale and Dr. Nelson, and found plaintiff's RFC allowed him to "perform simple, routine job

9

tasks that involve no more than low stress, and allow for the need to work primarily alone, with no regular general public contact." Thus, even though the ALJ did not specifically mention it, her determination was also consistent with the report of Dr. Jerrold.

Plaintiff also takes issue with the ALJ's credibility assessment. An ALJ's credibility determinations generally will not be overturned unless they are "patently wrong." *Powers*, 207 F.3d at 435. The ALJ determined plaintiff's medically determinable impairments "could reasonably be expected to produce some of the alleged symptoms," but plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Specifically, the ALJ observed plaintiff was "rather elusive in his testimony about what medications he was taking," and noted plaintiff made inconsistent statements about his use of alcohol and cocaine. The ALJ felt that even though plaintiff may not have had a "conscious intention to mislead," the inconsistencies in his testimony and his statements to physicians suggest "the information provided by [plaintiff] generally may not be entirely credible." The ALJ noted the conspicuous lack of mention of a cane in the treatment reports from Lake County, which had been seeing plaintiff multiple times a year for approximately 4 years. The ALJ also noted plaintiff "has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling any symptoms." The ALJ further noted Dr. Mitten's report that plaintiff "had shown considerable relief of his symptomatic state" after treatment. Based on the evidence cited by the ALJ, the ALJ's credibility determination was not "patently wrong," and therefore will not be overturned.

08 C 5441

**ORDERED**: Plaintiff's motion for summary judgment [15] is denied. Defendant's motion for summary judgment [17] is granted. Judgment in favor of defendant and against plaintiff, affirming defendant's decision, shall be set forth on a separate document. *See* Fed. R. Civ. P. 58(a), 79(a).

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: July 28, 2009